DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>CHERISE KING,    )<br>)<br>Defendants.    )<br>) | Criminal No. 2023-cr-0015 |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Carl R Williams, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendant*

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Magistrate Judge Emile A. Henderson III's Report & Recommendation ("R&R") (Dkt. No. 83), in which the Magistrate Judge recommends that Defendant Cherise King ("Defendant") be declared mentally incompetent to proceed; that Defendant be committed to the Attorney General's custody for no more than 120 days; and that the director of the facility where Defendant is hospitalized be required "to provide reports on Defendant's progress every 60 days and provide an immediate report to the Court if it is determined that Defendant's competence has been restored . . . ." *Id*. at 13. For the following reasons, the Court will adopt the findings and recommendations in the R&R as modified herein.

### I.    BACKGROUND

On April 14, 2023 Defendant was indicted in the above-captioned case. (Dkt. No. 1). The four-count indictment charges Defendant, who is over 18, with engaging in sexual contact with a minor who was over 13 but under 16-years-old in violation of V.I. Code, tit. 14, § 1709(a); having

1

sex with the same minor on September 12 and September 15, 2022 in violation of V.I. Code, tit. 14, § 1700a; and making false statements to federal agents about her sexual contact with the minor in violation of 18 U.S.C. § 1001(a)(2). (Dkt. No. 1 at 1-3).

The United States did not seek pretrial detention at the Initial Appearance held before Magistrate Judge Henderson on November 15, 2023, and Defendant was released with various conditions, including that she "must advise the court or pretrial services office. . . in writing before making any change of residence" and "may not leave St. Croix without permission of the Court." (Dkt. No. 8 at 1-2). Magistrate Judge Henderson noted during the proceeding that Defendant "had an outburst" and made certain references and facial expressions to Assistant United States Attorney ("AUSA") Williams-Henry "that w[ere] wholly inappropriate." (Dkt. No. 18 at 32-33).

On March 25, 2024, the Probation Office reported to the Court that Defendant had refused to provide them with her current address. (Dkt. No. 27 at 1). Magistrate Judge Henderson issued a warrant for Defendant's arrest, requiring her to show cause why her pretrial release conditions should not be revoked. *Id.*. While the warrant for her arrest was outstanding, Defendant filed a motion seeking modification of her conditions of release which indicated that she was living at a different address on St. Croix than the one which she had previously provided to the Probation Office. (Dkt. No. 32 at 2). The motion did not include her current address. *Id.*[1] On May 7, 2024, before that motion was addressed, Defendant was arrested in Brooklyn, NY, pursuant to the warrant. (Dkt. No. 38). Defendant had not been granted permission to travel to New York.

While Defendant was detained pending the revocation hearing, she wrote the first of what

---

[1] Two days after filing the motion seeking modification of Defendant's conditions of release, her attorney, Gabriel Villegas, filed a motion to withdraw as counsel. (Dkt. No. 36). The Court granted that motion (Dkt. No 50), and simultaneously appointed Carl Williams to serve as Defendant's counsel (Dkt. No. 51).

2

would become many letters to the Court. (Dkt. No. 39 at 1).[2] In her May 14, 2024 fourteen-page letter addressed to Magistrate Judge Henderson, she discussed that she had previously obtained serious head injuries (*id*. at 4), experienced a "life-threatening domestic violence ordeal" (*id*. at 2), and was suffering from panic attacks, PTSD, and other physical and mental illnesses (*id*.). The Defendant also indicated that she had signed a lease for a new apartment in New York just a week prior. *Id*. at 6. Defendant described her fear of victimization and her desperation to be reunited with her children, while identifying herself as "special needs." *Id*. at 6, 14.

On June 20, 2024, the Court held an Initial Appearance and a Show Cause hearing regarding Defendant's alleged violations of her conditions of release. Defendant testified, but her testimony was marred by her frequent sobs, moans, and her interruptions of the Court. (Dkt. No. 83 at 5). She provided often incoherent and inconsistent testimony and explained that she struggled to remember things as a result of brain fog caused by a previous injury. *Id*.. She asserted that she could not understand the papers detailing the conditions of her release and did not remember sending Magistrate Judge Henderson the May 14, 2024 letter. *Id*., Dkt. No. 52 at 3. Defendant repeatedly testified that she could not remember, even as to what month, she had moved to New York in violation of the terms of her release. (Dkt. No. 83 at 5). However, based on her testimony Magistrate Judge Henderson found that Defendant had been living in New York since at least

---

[2] Between May 14, 2024, and the time of filing of this Opinion, Defendant King has written 25 *pro se* letters to this Court. (Dkt. Nos. 39, 53, 54, 59, 60, 61, 66, 74, 82, 84, 86, 87, 88, 89, 90, 91, 92, 93, 96, 98, 105, 106, 108, 109, and 110). Of these letters, one was treated as a motion for release and denied by Magistrate Judge Henderson on the grounds that Defendant had violated the terms of her release (Dkt. No. 57); three were stricken from the record by Magistrate Judge Henderson's *sua sponte* order as they were filed *pro se* at a time Defendant was represented by counsel (Dkt. No. 78); and ten were stricken from the record in response to Defense Counsel's motion that was granted on the same grounds (Dkt. Nos. 95, 97). The eleven remaining letters (Dkt. Nos. 53, 60, 61, 74, 96, 98, 105, 106, 108, 109, and 110) will be stricken by the Court for the same reason, of which Defendant has previously been informed on two occasions (Dkt. Nos. 78, 97). Specifically, the Constitution does not confer a right to proceed simultaneously by counsel and *pro se* . . . ." *United States v. Lopez*, 2022 U.S. Dist. LEXIS 37544, *1 (D.V.I. 2022) (citing *McKaskle v. Wiggins*, 104 S. Ct. 944 (1984)). "By requiring that briefs be filed only by counsel, [the Court] ensure[s] that counsel and client speak with one voice." *United States v. Turner*, 677 F.3d 570, 579 (3d Cir. 2012). As such, "the District Court [is] not obligated to consider [Defendant's] *pro se* motions . . . ." *United States v. D'Amario*, 268 F. App'x. 179, 180 (3d Cir. 2008).

3

January 2024, if not November 2023. *Id.*. During the hearing, AUSA Williams-Henry informed Magistrate Judge Henderson that Defendant turned to her and asked, "can you help me, please." *Id.*. After finding that Defendant had violated two of her conditions of release—that she must notify the Court before changing residences and refrain from traveling without Court permission—Magistrate Judge Henderson revoked her conditions of release and remanded her to the custody of the Attorney General for confinement pending trial. (Dkt. No. 52 at 4). Based on her demeanor and testimony during the hearing, Magistrate Judge Henderson ordered that Defendant undergo a psychological evaluation. (Dkt. No. 56).

Pursuant to that Order, the Court received the report of Dr. Lisa Feldman, forensic psychologist, dated August 26, 2024. (Dkt. No. 69-1). The Report concluded:

> Ms. King is actively displaying symptoms of a serious mental illness which significantly impact her factual and rational understanding of the legal process. Furthermore, it is likely that her current mental state will interfere with her ability to assist towards her own defense and conform her conduct appropriately in the courtroom. Therefore, it is recommended that the defendant be found Incompetent to Stand Trial and that she undergo mandatory competency restoration treatment at a more appropriate setting, such as a medical facility.

(Dkt. No. 83 at 5-6). A few days after receiving the report, Defendant's attorney moved for a competency hearing. (Dkt. No. 70 at 1). Prior to the hearing, Defendant's counsel filed a motion in which he noted that he had conferred with the United States, and that "the United States and the defense each intend to . . . adopt the results and recommendations provided in Dr. Feldman's submitted report." (Dkt. No. 72 at 1). At the competency hearing, the Assistant United States Attorney stated that the United States did not contest Dr. Feldman's findings regarding Defendant's incompetence. (Dkt. No. 83 at 6).

Dr. Feldman testified during the competency hearing held on October 4, 2024 as to Defendant's behavior during her evaluation, which is also reflected in Dr. Feldman's written

4

report. According to Dr. Feldman, Defendant was highly emotional during the evaluation, struggled to focus on the task at hand, and exhibited paranoid delusions. (Dkt. No. 83 at 6). Defendant also demonstrated poor judgment, poor understanding of cause-and effect relationships, and impaired insight into her mental health and legal status. (Dkt. No. 83 at 6).[3]

When questioned as to Defendant's prognosis, Dr. Feldman testified that she believed recovery was possible with appropriate medication and therapy, but that she was reluctant to report total confidence given Defendant's reported past noncompliance with psychiatric treatment. (Dkt. No. 83 at 9). Dr. Feldman recommended that Defendant be transferred to a federal medical center for more comprehensive, inpatient psychiatric assessment and treatment along with individual and/or group counseling to improve Defendant's coping mechanisms. *Id*. Dr. Feldman could not provide the Court with an approximate timeline of the length of treatment needed to restore Defendant's competency, or whether it could be restored at all. *Id*.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Standard for Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); LRCi 72.3. When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C.

---

[3] Dr. Feldman's written report did note that Defendant's test scores indicated slight evidence she was feigning nonpsychotic symptoms. (Dkt. No. 83 at 8). In response to questioning by Magistrate Judge Henderson, Dr. Feldman clarified those results, explaining first that Defendant's score on the feigning scale was still relatively low. *Id*.. Dr. Feldman then explained that Defendant's answers to the questions which caused the elevated score did not warrant serious concern. *Id*.. Dr. Feldman asserted she was confident in her opinion that Defendant was incompetent to move forward to trial. *Id*..

5

§ 636(b)(1) (similar).

Where the parties do not object to a magistrate judge's report and recommendation, there is no requirement that a district court review the report and recommendation before accepting it. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); *Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama*, Civ. A. No. 15-0041, 2023 WL 6388015, at *3 (D.V.I. Sept. 30, 2023) (citing *Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011)). Despite the Supreme Court's decision in *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice [is] to afford some level of review to dispositive legal issues raised by the report." *Broomall v. DA of the Cnty. of Delaware*, No. 2:22-cv-1943, 2024 WL 1163542, at *1 n.1 (E.D. Pa. Mar. 18, 2024) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x at 153 (3d Cir. 2011) ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate." (internal quotation omitted) (citation omitted)).

"Accordingly, a district judge reviews those parts of the magistrate judge's report and recommendation to which parties have not objected under the 'plain error' standard of review." *Sunshine Shopping Ctr., Inc.,* 2023 WL 6388015, at *3 (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017)); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that "plain error" means clear or obvious, and it must be prejudicial, in that "[i]t must have affected the outcome of the district court proceedings"). Here no objections were submitted regarding Magistrate Judge Henderson's R&R, and as such, plain error review is applicable.

### B. Competency to Stand Trial

A competency hearing must be held "at any time . . . prior to the sentencing of the defendant . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering [her] mentally incompetent to the extent that [s]he is unable to understand the nature and consequences of the proceedings against h[er] or to assist properly in h[er] defense." 18 U.S.C. § 4241(a). Integral to the criminal justice system is the notion that "a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)) (internal quotes omitted). The conviction of a legally incompetent person is a violation of due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Leggett*, 162 F.3d at 241.

The United States bears the burden of proof in establishing the defendant's competency to stand trial. *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1985). To evaluate a defendant's competency, district courts are required to consider certain factors that include "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Leggett*, 162 F.3d at 242. A court may also consider "an attorney's representation about his client's competency." *United States v. Renfroe*, 825 F.2d 763, 767 (3d Cir. 1987). In finding a defendant incompetent to proceed, a court may also take into account agreement between the United States and the defendant as to the defendant's incompetence. *See, e.g., United States v. Royce*, No. 17-cr-158, 2021 WL 5889802 at *2 (M.D. Pa. Dec. 13, 2021).

There is a three step process created by 18 U.S.C. § 4241 to assess competency: "(1) the

7

district court initially determines whether a defendant is competent to stand trial; (2) if found incompetent, the district court commits the defendant to the Attorney General's custody for hospitalization [for a reasonable period of time not to exceed four months] to determine if there is a substantial probability within the foreseeable future the defendant will be competent to stand trial; (3) if there is no substantial probability of competence to stand trial within the foreseeable future, the Attorney General must find the defendant dangerous or release h[er] back into society." *United States v. Reese*, Crim. A. No. 18-39, 2018 U.S. Dist. LEXIS 172702, at *18 (E.D. Pa. Oct. 5, 2018).

### III.    DISCUSSION

After reviewing Dr. Feldmans's report, as well as the R&R's finding that Defendant suffers from "a mental disease or defect" impairing her "capacity to make decisions related to the courtroom process" such as accepting or rejecting a potential plea agreement, and resulting in her failing "to understand the adversarial nature of the proceedings against her," the Court concludes that there is no plain error in the Magistrate Judge's recommendation that Defendant should be found mentally incompetent. (Dkt. No. 83 at 11-13). Based on the findings in the R&R and Dr. Feldman's report, the Court finds that Defendant is not competent to proceed to trial and orders that Defendant be placed into the Attorney General's custody for placement in a hospital for four months or until a determination has been made that Defendant is competent to stand trial, whichever period is shorter. 18 U.S.C. § 4241(d).

## IV.  CONCLUSION

For the foregoing reasons, the Court: (a) finds that Defendant is "presently suffering from a mental disease or defect rendering h[er] mentally incompetent to the extent that [s]he is unable to understand the nature and consequences of the proceedings against h[er] or to assist properly in h[er] defense," 18 U.S.C. § 4241(d); and (b) commits Defendant to the Attorney General's custody for hospitalization for not greater than four months, for a determination as to whether Defendant is able to regain mental capacity.

**UPON CONSIDERATION** of the foregoing, it is hereby

**ORDERED** that Magistrate Judge Emile Henderson III's Report and Recommendation (Dkt. No. 83) is **ADOPTED** as modified herein; and it is further

**ORDERED** that Defendant Cherise King is determined to be mentally incompetent to the extent that she is presently unable to proceed to trial; and it is further

**ORDERED** that Defendant is committed to the custody of the Attorney General to be held at a federal medical center where she can receive comprehensive, inpatient psychiatric treatment and counseling for not greater than four months for a determination as to whether Defendant can regain mental capacity; and it is further

**ORDERED** that the United States shall have up to and including **January 29, 2025** to file on the record notice that Defendant has been transported to a suitable facility for treatment pursuant to this Order; and it is further

**ORDERED** that Defendant shall have up to and including **April 24, 2025**, to file a motion indicating whether Defendant is competent to participate in her own defense and trial at that time; and it is further

9

**ORDERED** that the United States shall have up to and including **May 1, 2025**, to file any response to Defendant's motion regarding her competence; and it is further

**ORDERED** that Defendant's "Motion for Ruling on Magistrate Judge's October 29, 2024 Report and Recommendation" (Dkt. No. 104) is **DENIED AS MOOT;** and it is further

**ORDERED** that Defendant and the United States' Joint "Motion for Ruling on Magistrate Judge's Report and Recommendation" (Dkt. No. 107) is **DENIED AS MOOT**.

Dated: January 15, 2024

                                                                                                                     /s/  
                                                                     WILMA A. LEWIS  
                                                                     District Judge