**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **Criminal Action No. 2023-0015** |
| ) | |
| **CHERISE KING,** ) | |
| ) | |
| Defendant. ) | |

**Attorneys:**

**Rhonda Williams-Henry, Esq.**
St. Croix, U.S.V.I.
    *For the United States*

**Carl R. Williams, Esq.**
St. Thomas, U.S.V.I.
    *For Defendant Cherise King*

**MEMORANDUM OPINION**

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on the parties' "Joint Notice of Filing Psychological Report" (Dkt. No. 140); Defendant Cherise King's ("Defendant") "Motion to Determine Defendant Competent" (Dkt. No. 143); the Government's "Notice of Filing Response of the United States to Motion to Determine Defendant Competent" (Dkt. No. 146); and oral argument by the parties at the December 2, 2025 Competency Hearing. The Court granted Defendant's "Motion to Determine Defendant Competent" (Dkt. No. 143) by oral ruling from the bench at the conclusion of the December 2, 2025 Competency Hearing. This Memorandum Opinion memorializes the reasons for the Court's ruling.

### I.    BACKGROUND

On April 14, 2023, Defendant was indicted in the above-captioned case. (Dkt. No. 1). The

four-count Indictment charges Defendant, who is over 18 years of age, with engaging in sexual contact with a minor who was over 13 but under 16 years of age in violation of 14 V.I.C. § 1709(a); having sex with the same minor on September 12 and September 15, 2022 in violation of 14 V.I.C. § 1700(a); and making false statements to federal agents about her sexual contact with the minor in violation of 18 U.S.C. § 1001(a)(2). (Dkt. No. 1 at 1-3).

The United States did not seek pretrial detention of Defendant at the Initial Appearance held before Magistrate Judge Emile A. Henderson III on November 15, 2023, and Defendant was released with various conditions, including that she "must advise the court or pretrial services office . . . in writing before making any change of residence" and she "may not leave St. Croix without permission of the Court." (Dkt. No. 8 at 1-2). Magistrate Judge Henderson noted during the proceeding that Defendant "had an outburst" and made certain references and facial expressions to Assistant United States Attorney ("AUSA") Rhonda Williams-Henry "that w[ere] wholly inappropriate." (Dkt. No. 18 at 32-33).

On March 25, 2024, the U.S. Probation and Pretrial Services Office reported to the Court that Defendant had refused to provide it with her current home address and thus requested that an arrest warrant be issued for Defendant. (Dkt. No. 27 at 1). Thereafter, Magistrate Judge Henderson issued a warrant for Defendant's arrest, requiring her to show cause why her pretrial release conditions should not be revoked. *Id*. While the warrant for her arrest was outstanding, Defendant filed a motion seeking modification of her conditions of release, which revealed that she was living at a different address on St. Croix than the one which she had previously provided to the Probation Office. (Dkt. No. 32 at 2). However, the Motion did not include her current address. *Id.*[1] On May

---

[1] Two days after filing the motion seeking modification of Defendant's conditions of release, her attorney, Gabriel J. Villegas, Esq. filed a motion to withdraw as counsel. (Dkt. No. 36). The Court

7, 2024, Defendant was arrested in Brooklyn, New York pursuant to the warrant. (Dkt. No. 38). Defendant had not been granted permission to travel to New York.

While Defendant was detained pending her revocation hearing, she wrote the first of what would become many letters to the Court. (Dkt. No. 39 at 1). In her May 14, 2024 14-page letter addressed to Magistrate Judge Henderson, she discussed that she had previously obtained serious head injuries (*id*. at 4), experienced a "life-threatening domestic violence ordeal" (*id*. at 2), and suffered from panic attacks, PTSD, and other physical and mental illnesses (*id*.). Defendant also indicated that she had signed a lease for a new apartment in New York just a week prior. *Id*. at 6. Further, Defendant described her fear of victimization and her desperation to be reunited with her children, while identifying herself as "special needs." *Id*. at 6, 14.

On June 20, 2024, the Court held an Initial Appearance and a Show Cause Hearing regarding Defendant's alleged violations of her conditions of release. In a Report and Recommendation ("R&R") issued by Magistrate Judge Henderson on October 29, 2024, he notes that Defendant testified at the proceeding, but her testimony was marred by her "frequent sobs, moans, and interruptions of the Court." (Dkt. No. 83 at 5). Defendant provided often "incoherent and inconsistent testimony," and explained that she struggled to remember things as a result of brain fog caused by a previous injury. *Id*. She asserted that she could not understand the papers detailing the conditions of her release and did not remember sending Magistrate Judge Henderson the May 14, 2024 letter. *Id*., Dkt. No. 52 at 3. Defendant repeatedly testified that she could not remember, even as to what month, she had moved to New York in violation of the terms of her release. (Dkt. No. 83 at 5). However, based on her testimony, Magistrate Judge Henderson found

---

granted that motion (Dkt. No 50), and simultaneously appointed Carl R. Williams, Esq. to serve as Defendant's counsel (Dkt. No. 51).

that Defendant had been living in New York since at least January 2024, and possibly as early as November 2023. *Id.* During the Hearing, AUSA Williams-Henry informed Magistrate Judge Henderson that Defendant turned to her and asked, "[C]an you help me, please?" *Id.* After finding that Defendant had violated two of her conditions of release—that she must notify the Court before changing residences and that she could not leave St. Croix without the Court's permission—Magistrate Judge Henderson revoked Defendant's conditions of release by Order entered on June 21, 2024 and remanded her "to the custody of the Attorney General for confinement pending trial." (Dkt. No. 52 at 4). Based on her demeanor and testimony during the Hearing on June 27, 2024, Magistrate Judge Henderson ordered that Defendant undergo a psychological evaluation. (Dkt. No. 56).

In response to the Order for a psychological evaluation, the Court received the report of Dr. Lisa Feldman ("Dr. Feldman"), forensic psychologist, dated August 26, 2024. (Dkt. No. 69-1). The Report concluded:

> Ms. King is actively displaying symptoms of a serious mental illness which significantly impact[s] her factual and rational understanding of the legal process. Furthermore, it is likely that her current mental state will interfere with her ability to assist towards her own defense and conform her conduct appropriately in the courtroom. Therefore, it is recommended that the defendant be found Incompetent to Stand Trial and that she undergo mandatory competency restoration treatment at a more appropriate setting, such as a medical facility[.]

(Dkt. No. 69-1 at 16).

A few days after receiving the Report, counsel for Defendant moved for a competency hearing. (Dkt. No. 70 at 1). Prior to the October 4, 2024 Competency Hearing, Defendant's counsel filed a motion in which he noted that he had conferred with the United States, and that "the United States and the defense each intend to . . . adopt the results and recommendations provided in Dr. Feldman's submitted [R]eport." (Dkt. No. 72 at 1). Accordingly, at the October 4, 2024

4

Competency Hearing, the United States did not contest Dr. Feldman's findings regarding Defendant's incompetence. (Dkt. No. 83 at 6).

Dr. Feldman testified during the October 4, 2024 Competency Hearing as to Defendant's behavior during her evaluation, which is also reflected in Dr. Feldman's written Report. Dr. Feldman reported that Defendant exhibited little understanding of the specifics of the case brought against her, or the legal process as a whole. (Dkt. No. 69-1 at 14). According to Dr. Feldman, Defendant was highly emotional during the evaluation, struggled to focus on the task at hand, and exhibited paranoid delusions. (Dkt. No. 83 at 6). Defendant also demonstrated poor judgment, poor understanding of cause-and-effect relationships, and impaired insight into her mental health and legal status. *Id.*[2] As a result, she was diagnosed with "unspecified schizophrenia spectrum and other psychotic disorder" as well as PTSD. (Dkt. No. 69-1 at 14).

When questioned as to Defendant's prognosis, Dr. Feldman testified that she believed recovery was possible with appropriate medication and therapy, but that she was reluctant to report total confidence given Defendant's reported past noncompliance with psychiatric treatment. (Dkt. No. 83 at 9). Dr. Feldman recommended that Defendant be transferred to a federal medical center for a more comprehensive, inpatient psychiatric assessment and treatment along with individual and/or group counseling to improve her coping mechanisms. *Id.*

On October 29, 2024, Magistrate Judge Henderson submitted a Report and Recommendation to this Court, noting that he had "been afforded firsthand evidence of Ms. King's

---

[2] Dr. Feldman's written Report did note that Defendant's test scores indicated slight evidence that she was feigning nonpsychotic symptoms related to competency. (Dkt. No. 83 at 8). In response to questioning by Magistrate Judge Henderson, Dr. Feldman clarified those results, explaining first that Defendant's score on the feigning scale was still relatively low. *Id.* Dr. Feldman then explained that Defendant's answers to the questions which caused the elevated score did not warrant serious concern. *Id.* Dr. Feldman asserted that she was confident in her opinion that Defendant was incompetent to move forward to trial. *Id.*

irrational behavior and demeanor during hearings[;]" "witnessed Ms. King engage in protracted emotional outbursts and struggle to focus on the serious charges against her[;]" and was "convinced that Ms. King is presently suffering from mental disease or defect" making her incompetent to proceed. (Dkt. No. 83 at 11-12) (citation modified).

On January 15, 2025, this Court adopted the findings and recommendations of the R&R with modifications. (Dkt. No. 115 at 1). As a result, the Court committed Defendant "to the custody of the Attorney General to be held at a federal medical center where she can receive comprehensive, inpatient psychiatric treatment and counseling for not greater than four months for a determination as to whether Defendant can regain mental capacity" in accordance with 18 U.S.C. § 4241(d). *Id.* at 9.

On or about February 28, 2025, Defendant was transported from MDC Guaynabo to Federal Medical Center Carswell ("FMC Carswell"), arriving at FMC Carswell on or about March 3, 2025. (Dkt. No. 132). On July 18, 2025, counsel for Defendant and the Government filed a "Joint Notice of Filing Psychological Report" (Dkt. No. 140), with a forensic psychological report by Dr. Angela van der Walt ("Dr. van der Walt") dated July 11, 2025. (Dkt. No. 140). Dr. van der Walt concluded that "Ms. King is currently competent to stand trial." (Dkt No. 140-1 at 1).

On July 28, 2025, Defendant filed a "Motion to Determine Defendant Competent" in which Defendant stated that she "accept[s] the Restoration Report as written and the conclusions drawn therein" and requested that the Court enter a revised scheduling Order and set the matter for trial. (Dkt. No. 143). On August 1, 2025, the Government responded to Defendant's Motion, "accept[ing] Dr. van der Walt's opinion in the Restoration Report" and not opposing "a finding that the defendant is now competent to proceed to trial." (Dkt. No. 146).

6

## II. APPLICABLE LEGAL PRINCIPLES

Integral to the criminal justice system is the notion that "a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)) (citation modified). The conviction of a legally incompetent person is a violation of due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Leggett*, 162 F.3d at 241. A competency hearing must be held "at any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering [her] mentally incompetent to the extent that [s]he is unable to understand the nature and consequences of the proceedings against h[er] or to assist properly in h[er] defense." 18 U.S.C. § 4241(a). If neither party moves for a competency hearing, a trial court may order one occur *sua sponte*. *United States v. Seeley*, 574 F. App'x 75, 80 (3d Cir. 2014).

"The test for incompetence is . . . well settled. A defendant may not be put to trial unless [s]he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Ryan v. Gonzales*, 568 U.S. 57, 66 (2013) (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)) (citation modified).

A finding of competency is a factual finding, and the United States bears the burden of proof in establishing the defendant's competency to stand trial by a preponderance of the evidence. *United States v. Louis*, 596 F. App'x 167, 171 (3d Cir. 2015); citing *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989). To evaluate a defendant's competency, district courts are

required to consider certain factors that include "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Leggett*, 162 F.3d at 242; *United States v. Seeley*, 574 F. App'x 75, 81 (3d Cir. 2014). A court may also consider "an attorney's representation about his client's competency." *United States v. Speight*, 554 F. App'x 119, 122 (3d Cir. 2014) (quoting *United States v. Renfroe*, 825 F.2d 763, 767 (3d Cir. 1987)). Further, a court may take into account any agreement between the United States and the defendant as to the defendant's competence. *See, e.g., United States v. Royce*, No. 17-cr-158, 2021 WL 5889802 at *2 (M.D. Pa. Dec. 13, 2021).

There is a three-step process created by 18 U.S.C. § 4241 to assess competency: "(1) the district court initially determines whether a defendant is competent to stand trial; (2) if found incompetent, the district court commits the defendant to the Attorney General's custody for hospitalization [for a reasonable period of time not to exceed four months] to determine if there is a substantial probability within the foreseeable future the defendant will be competent to stand trial; (3) if there is no substantial probability of competence to stand trial within the foreseeable future, the Attorney General must find the defendant dangerous or release h[er] back into society." *United States v. Reese*, Crim. A. No. 18-39, 2018 U.S. Dist. LEXIS 172702, at *18 (E.D. Pa. Oct. 5, 2018). If the director of the hospitalization facility certifies to the court that—following the period of hospitalization—the defendant is competent to stand trial, the court must hold a hearing meeting the requirements of 18 U.S.C. § 4247(d).[3] 18 U.S.C. § 4247(e). Following the hearing, if the court determines that the defendant is indeed competent to stand trial, it must order the

---

[3] 18 U.S.C. § 4247(d): "At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."

8

defendant's discharge from the facility and set the matter for trial. 18 U.S.C. § 4241(e).

### III.    DISCUSSION

Following the completion of Defendant's four-month evaluation period at FMC Carswell the Warden of that facility, T. Rule, provided a certificate of Defendant's recovery to the Court asserting that "[i]n the opinion of our clinical staff, Ms. Cherise King . . . has now recovered from symptoms of a mental disease or defect to the extent that she is competent to proceed. Ms. King is able to understand the nature and consequences of the charges against her and to properly assist in her defense." (Dkt. No. 140-3). In accordance with 18 U.S.C. § 4247(d), this Court held a Competency Hearing on December 2, 2025 to make a finding by a preponderance of the evidence as to whether Defendant "has sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against [her]." *Cooper*, 517 U.S. at 354.

At the December 2, 2025 Competency Hearing, the Court considered testimony from evaluating forensic psychologist Dr. van der Walt regarding her Report on Defendant's competency, as well as argument by both counsel for the Government and Defense. All three are in agreement that Defendant is currently competent to proceed to trial.

The Court does take note, however, that during the evaluation Defendant was diagnosed with "mild cognitive disorder" in accordance with the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition-Text Revision (DSM-5-TR). Dr. van der Walt opined that Defendant's mild neurocognitive disorder is a result of her previous traumatic head injuries.[4] However, this

---

[4] Defendant has been a victim of domestic violence, was in a bus accident, and has sustained multiple head injuries over the years. Following the last domestic violence injury and the bus accident, Defendant sought medical treatment where she recalled that doctors documented a traumatic head injury, and Defendant reported having symptoms such as brain fog, trouble concentrating, waking up confused, and mild seizures. Although she was unable to obtain medical

9

disorder did not affect Dr. van der Walt's conclusion that Defendant is competent to stand trial. *Id.* at 16.

Dr. van der Walt identified the primary symptoms of Defendant's mild cognitive disorder as social inhibition, emotional dyscontrol, and expressive language deficits. Specifically, Defendant's social disinhibition—which Dr. van der Walt explained can be broadly understood as the inability to suppress an action or verbalization when it is inappropriate in a social setting—results in Defendant sharing inappropriate and sometimes unrelated information.[5] *Id.* at 9. This information occasionally placed her or others in a negative light, and Dr. van der Walt expressed some concern that Defendant would experience similar difficulties in response to questions at trial if she were to testify. *Id.* at 15. Defendant's emotional dyscontrol presents in the form of frequent crying beyond what would be situationally expected, and regardless of context or Defendant's underlying emotion. *Id.* at 9. Dr. van der Walt believes these crying episodes are a pseudobulbar affect as a result of Defendant's past head injuries. Further, during neuropsychological testing, Dr. van der Walt found Defendant had notable expressive language deficits, which likely account for her difficulty in expressing herself in a linear and succinct manner, causing her to go off on occasional tangents and to transition between topics without clear reason. *Id.* at 10.

Despite Defendant's cognitive disorder, Dr. van der Walt identifies core factors which she indicated far outweigh Defendant's emotional issues, leading Dr. van der Walt—along with counsel for Defendant and the Government—to conclude that Defendant is competent to stand trial. Despite the initial indication by Dr. Feldman that Defendant may be suffering from

---

documents to confirm the injuries, Dr. van der Walt asserts that Defendant's symptoms are consistent with such injuries.

[5] Dr. van der Walt believes that Defendant's continued letter writing to the Court, despite being represented by counsel, and thus informed that such behavior is legally impermissible, is an example of this problem.

schizophrenia, Defendant was constantly monitored during her evaluation period and showed no signs of psychosis. *Id.* at 5. Further, Defendant did not meet the criteria to be diagnosed with PTSD, a personality disorder, or any other mental disease. *Id*. at 10, 14.

Dr. van der Walt's Report and testimony and Defense counsel's allocution lead the Court to find that Defendant has the present ability to consult with her lawyer with a reasonable degree of rational understanding. In her Report, Dr. van der Walt noted that when discussing Defendant's case with her, Defendant raised rational concerns. *Id.* at 14. Dr. van der Walt reported that while it is likely that Defendant's mild neurocognitive disorder may impact her interpersonal relationship with her attorney, it can be easily accommodated by giving Defendant time to calm herself if she begins crying; asking her to share when she is about to provide information she thinks is inappropriate and then wait to make the statement; and setting firm boundaries with her. *Id.* at 15. At the December 2, 2025 Competency Hearing, Defense counsel affirmed that he had consulted with his client, and was satisfied that she was able to assist him in her own defense.

Defendant also shows a strong factual understanding of the proceedings against her. During her evaluation period, she attended a "competency restoration group," which focused on courtroom terminology, plea agreements, rational decision-making, the role of the defendant, and appropriate behavior in court. *Id.* at 8. She demonstrated good recall of her competency restoration lessons, and took a quiz on their subject matter for which she received a perfect score. *Id.* Dr. van der Walt's Report noted that Defendant: was able to read the Indictment in this matter when it was presented to her; and reflected an understanding of the charges against her, the potential sentence she could receive if found guilty, the jury selection process, and the role of those in the courtroom such as the prosecutor, defense attorney, and judge. *Id.* at 11. At the December 2, 2025 Competency Hearing, Dr. van der Walt testified that Defendant had a very strong understanding

of her role as a defendant, and that she had no concerns about Defendant's factual understanding of the information that she had learned regarding the legal system. Dr. van der Walt also noted that she had no concerns about Defendant's rational understanding of the acceptance of a plea agreement if one were offered to her.

The one portion of the competency standard where Defendant's mild neurocognitive disorder created some level of concern for Dr. van der Walt was the manner in which Defendant may conduct herself in the courtroom. In her Report, Dr. van der Walt expressed concern as to how Defendant's crying spells could negatively impact the perception of her by others during court proceedings, especially before a jury, and noted that Defendant seemed to downplay the impact of such emotional outbursts. *Id.* at 15. However, Dr. van der Walt asserted that these crying spells could likely be mitigated with thorough testimony preparation. *Id.* Dr. van der Walt also expressed concern that Defendant's compulsive oversharing of information could present itself if she decided to testify at trial. *Id.* Despite this compulsion, however, Dr. van der Walt noted that Defendant could generally comport herself in a manner appropriate for the situation she was in, and had the ability to refrain from making inappropriate statements with some encouragement. *Id.* Thus, if Defendant chose to testify, Dr. van der Walt believes that taking breaks and being given reminders to only answer the question asked could be an effective accommodation to mitigate such behavior. During her evaluation period, Defendant attended an "illness management and recovery group" which taught her coping strategies to manage negative emotions. Dr. van der Walt noted that Defendant's behavior at the December 2, 2025 Competency Hearing supported a finding that Defendant could comport herself appropriately at trial. The Court agrees that Defendant's conduct at the December 2, 2025 Competency Hearing was appropriate.

Thus, while not disregarding Defendant's mild neurocognitive defect, the Court concludes that Defendant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding, and a rational as well as factual understanding of the proceedings against her.

## IV. CONCLUSION

In view of the foregoing, the Court concurs with Dr. van der Walt's professional opinion, as well as the positions of both counsel the Government and Defendant Cherise King, that Defendant is competent to stand trial. Accordingly, the Court will grant Defendant's "Motion to Determine Defendant Competent" (Dkt. No. 143) as it did by oral Order at the conclusion of the December 2, 2025 Competency Hearing.

An appropriate Order accompanies this Memorandum Opinion.

Date: January 2, 2026 _____/s/_____
WILMA A. LEWIS
Senior District Judge